Filed 7/25/14  P. v. Rodriguez CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B244749 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. BA389396) |
| JAMES RODRIGUEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Monica Bachner, Judge.  Affirmed as modified.

Jamilla Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Marc A. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

_____

James Rodriguez was convicted of two attempted burglaries in the Mount Washington area of Los Angeles County. On appeal, he contends the trial court erred in denying his motion under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) to discover the personnel files of the investigating officers. He also argues the trial court miscalculated his presentencing custody credits and improperly imposed a criminal prevention fine. We modify the judgment to reflect the correct number of conduct credits and to vacate the challenged fine. We otherwise affirm the judgment.

**FACTS**

Rodriguez was charged with breaking into three homes over the course of several months in 2010. All of the homes were in Mount Washington, within a half mile of one another. On September 20, 2010, Alexis Djivre came home to find someone had broken into her house on Killarne Avenue and left it in disarray. A window screen had been removed from a bedroom window and the door was unlocked. Djivre could not identify what, if anything, was missing from her house, other than the comforter from her bed.

Sharon Bernard had just finished building a new house for her family on Roseview Avenue, but had not yet moved in. She came by almost every day, however, with items for the new house. On the morning of November 1, 2010, Bernard arrived at the new house and discovered someone had dragged a bench underneath the garage window. The garage window was broken, as was a bedroom window on the lower floor. Window screens from other windows were also pried off or damaged. It did not appear anyone was able to enter the home because all the windows and doors were still locked. Bernard did not notice anything missing from the house. A fingerprint taken from the home matched Rodriguez's prints.

On December 8, 2010, Arthur Willie was in his home on Brilliant Drive at about 8:00 p.m., when the doorbell rang. Willie switched on his surveillance video and observed a stranger, who he identified as Rodriguez at trial, standing at the door. Willie watched Rodriguez move around the front of his home. He then watched Rodriguez move to the side of the home and cut the power to his home. Willie called the police, who arrived a short time later. They discovered the lock on the electrical box had

been cut and the box opened. Joseph Bain, a Los Angeles Police officer who happened to be Rodriguez's cousin, confirmed at trial that Rodriguez was the person in the surveillance video.

Los Angeles Police Detective Kenny Korn was assigned to investigate the incidents at each of the three homes. After viewing Willie's surveillance video, Detective Korn believed he recognized Rodriguez from past encounters. He asked Officer Bain to also identify Rodriguez, which he did. Rodriguez was arrested and interrogated on September 28, 2011, after waiving his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*). During the interrogation, Rodriguez signed a written statement admitting: "I was on Roseview. I broke the garage window, stuck my flashlight in, then left. I did not take anything. I was walking around the house on Brilliant [Drive]. I realized I was on camera, so I unplugged the electrical box. I did not enter. Actually, the Roseview garage window was broken by someone else. I've done 10 burglaries in a twelve-month stand."

Rodriguez was charged with attempted first degree residential burglary of the houses on Roseview Avenue (count 1) and Brilliant Drive (count 2) pursuant to Penal Code[1] sections 664 and 459. He was also charged with second degree burglary of the storage shed on San Rafael (count 3) pursuant to section 459. It was further alleged that Rodriguez suffered a prior strike and a prior serious felony conviction (§§ 667, subds. (a)-(i), 1170.12.)

At trial, Detective Korn testified that Rodriguez admitted to going to the Roseview Avenue location with another man. The man broke the garage window and Rodriguez stuck his arm through the window in an attempt to pull the emergency cord to open the garage door. He left when he failed to find the cord and did not see anything in the garage to take. Rodriguez also admitted to Detective Korn that he was the suspect in Willie's surveillance video. He remembered going to the home on Brilliant Drive and ringing the door bell. When he realized he was on video, he decided to disconnect the

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

electricity at the electrical box. He fled after he heard someone shouting he was going to call the police.

After the interrogation, Rodriguez rode around the Mt. Washington area with Detective Korn and pointed out the homes on Roseview Avenue and Brilliant Drive as locations he had attempted to burglarize. He also admitted he removed camping chairs from a shed on Djivre's property. However, Djivre could not remember at trial if someone had taken chairs from the shed since her focus at the time was on the house.

The prosecution also presented evidence of uncharged crimes pursuant to Evidence Code section 1101 for the limited purpose of showing whether Rodriguez acted with the intent to commit a burglary. The trial court instructed the jury to consider the evidence solely to determine intent and not for any other purpose, particularly to conclude Rodriguez had a bad character or was disposed to commit a crime. The People presented testimony that on July 9, 2010, police officers discovered Rodriguez with stolen items inside a pink bedsheet. The items belonged to Michelle Tuminello, who lived on San Raphael in the Mount Washington area. The screen to a bedroom window, which had been left open, had been pried off. After waiving his *Miranda* rights, Rodriguez admitted he needed money and broke into the home with his friend when they noticed an open window as they were driving by. Rodriguez was also found with tools commonly used to commit burglaries on November 8, 2010, during a routine traffic stop.

A jury found Rodriguez guilty of attempted burglary of the homes on Roseview and Brilliant Drive (counts 1 & 2), but not guilty of the second degree burglary charge (count 3). Rodriguez admitted the truth of the prior strike and prior serious felony allegations. He was sentenced to a total of 10 years 4 months in state prison and ordered to pay various fines and fees. He timely appealed.

## DISCUSSION

Rodriguez contends the trial court erred when it denied his *Pitchess* motion. He also asserts the trial court made two sentencing errors. While the *Pitchess* motion was properly denied, we agree the trial court miscalculated Rodriguez's custody credits and improperly imposed a crime prevention fine of $38.

4

## I.    *Pitchess* motion

### A.  Proceedings Below

Rodriguez submitted a *Pitchess* motion before trial for records relating to use of excessive force, bias, dishonesty, falsifying police reports, planting of evidence or misconduct amounting to moral turpitude by Detectives Korn and Kitzmiller.  In support of the *Pitchess* motion, Rodriguez submitted a declaration from his attorney alleging Detectives Korn and Kitzmiller falsified their police report and intended to testify based on the falsified report.  He alleged:

> "the officers lied about what Mr. Rodriguez said in the car.  First Mr. Rodriguez never offered to show the officers where he had committed burglaries, actually the officers told him that they were going to drive to the three locations and Mr. Rodriguez could tell them what he recognized because Mr. Rodriguez said he didn't remember the addresses.  The officers said that if Mr. Rodriguez was cooperative on the drive that he would get time served and just go home.  This went along with what they had said earlier when they told him he was not under arrest and this was just a compliance check and the burglaries were not a big deal. The officers then fabricated the statements listed in their report and summarized in the paragraph above.  Mr. Rodriguez said that he was at the house on Brilliant Drive but did not say that he went there to commit a burglary.  He was not even asked why he went there and never said it was to commit a burglary.  He didn't say that he was scared by that case so that he stopped committing burglaries and just stole things from Home Depot.  At some point during their conversations, none of which were recorded, Mr. Rodriguez admitted to stealing something from Home Depot two times in his life, prior, not in lieu of burglaries and not since the Brilliant Drive incident that was caught on video.  Mr. Rodriguez never even mentioned his mother and sister.  The statement about the burglaries occurring in the early morning hours was never made by Mr. Rodriguez.  The officers continuously told him what he should say so that the judge would go easy on him and he would go him but he did not say any of the statements listed above which

5

both officers claimed to be present for in their report. The defense intends to show that these officers fabricated the statements they attributed to Mr. Rodriguez because without those statements they had no evidence of a burglary at Brilliant Drive and very little evidence to connect him to the other cases. He was lied to[,] manipulated and coerced into making some statements but he did not make the ones listed in their report and mentioned in this motion."

The trial court denied Rodriguez's *Pitchess* motion, finding he had failed to present a plausible alternative scenario to justify an in camera review of the personnel records for possible discovery. Instead, the trial court found the supporting statement "appears to be just quibbling over interpretation of words."

## B. Analysis

Discovery of certain relevant information in peace officer personnel records is permitted on a showing of good cause. (*Pitchess, supra*, 11 Cal.3d 531; see also Evid. Code, §§ 1043-1045.) Evidence Code section 1043, subdivision (b)(3) requires "[a]ffidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that the governmental agency identified has the records or information from the records." The California Supreme Court has held that the good cause requirement embodies a "relatively low threshold" for discovery and the supporting declaration may include allegations based on "information and belief." (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 94.)

A showing of materiality requires the defendant to set forth a """"specific factual scenario"""" of officer misconduct applicable to his or her case that establishes "'a "plausible factual foundation"""" and articulates a valid theory of admissibility for the information sought. (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019 (*Warrick*).) A "plausible scenario of officer misconduct is one that might or could have occurred." (*Id*. at p. 1026.) The factual scenario may, depending on the circumstances of the case, consist of a denial of the facts contained in the police report. (*Id*. at pp. 1024-1025; *Garcia v. Superior Court* (2007) 42 Cal.4th 63, 71.) The trial court does not

6

determine whether the defendant's version of events is persuasive. (*Warrick*, *supra*, at p. 1026.)

Once the defense has established good cause, the court is required to conduct an in camera review of the records to determine what, if any, information should be disclosed to the defense. (Evid. Code, § 1045, subd. (b).) The statutory scheme balances two directly conflicting interests: the peace officer's claim to confidentiality and the defendant's compelling interest in all information pertinent to the defense. (*City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 53.)

We review a trial court's ruling on a *Pitchess* motion for abuse of discretion. (*People v. Samayoa* (1997) 15 Cal.4th 795, 827.) To exercise judicial discretion, a trial court must know and consider all material facts and all legal principles essential to an informed, intelligent, and just decision. (*In re Cortez* (1971) 6 Cal.3d 78, 85-86.) Under the abuse of discretion standard, we will disturb a discretionary trial court ruling only upon a showing of 'a clear case of abuse' and 'a miscarriage of justice.' (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331.) We may find discretion to have been abused only when the trial court "'exceeds the bounds of reason, all of the circumstances being considered.'" (*People v. Warner* (1978) 20 Cal.3d. 678, 683.)

Rodriguez contends the trial court abused its discretion when it denied his *Pitchess* motion. Rodriguez asserts he made a prima facie showing simply by denying he made the statements attributed to him in the officers' reports. We find no abuse of discretion.

First, Rodriguez's motion is overbroad. He requested discovery of the records for both Detectives Korn and Kitzmiller. However, Kitzmiller was not present at the arrest, did not testify at trial, and did not prepare the police report at issue. In his report, Detective Korn noted that Kitzmiller was present during the September 28, 2011 interview. That appears to be the extent of Kitzmiller's involvement in Rodriguez's case. Accordingly, discovery of his records are not supported by Rodriguez's allegations that the officers falsified the police report and intended to testify based on the false report.

7

Neither do Rodriguez's allegations of officer perjury and report falsification support discovery of any of the other categories of information sought, including complaints for racial bias, gender bias, ethnic bias, sexual orientation bias, violation of constitutional rights, false arrest, planting of evidence, false overtime or medical reports, or excessive violence. There was no contention, for example, that Detective Korn used excessive force or harbored any bias against Rodriguez. (*Warrick, supra*, 35 Cal.4th at p. 1027; see also *People v. Jackson* (1996) 13 Cal.4th 1164, 1220 [overbroad discovery request properly narrowed to misconduct similar to that alleged].)

The motion is also insufficient in the broader picture. The supporting declaration alleged the officers "lied about what Mr. Rodriguez said in the car." Specifically, Rodriguez takes issue with the following: (1) he never offered to show the officers where he had committed burglaries; (2) the officers told him he would get time served and just go home if he was cooperative; (3) Rodriguez did not say he went to the house on Brilliant Drive to commit a burglary; (4) he never admitted he stole things from Home Depot; and (5) he never told the officers he committed the burglaries early in the morning.

The trial court denied the motion, finding Rodriguez presented no alternative plausible scenario. The court also found the declaration argued "matters that appear to be minor discrepancies in a possible interpretation of what words mean regarding oral statements that are summarized in the police report relating to the defendant. [¶] There is a written statement of the defendant, there is videotape of the defendant, so the court's indicat[ion] is that the showing does not rise to the level of the showing necessary for a *Pitchess*."

Rodriguez contends he has presented a plausible alternate scenario: "he was making incriminating oral and written statements in the presence of police officers because those police officers promised him leniency if he would do so." However, this theory renders Rodriguez's *Pitchess* motion internally inconsistent and thus, implausible. Rodriguez expressly denied making any of those statements (i.e., he intended to burgle the Brilliant Drive house, he committed the burglaries in the early morning) in his

8

*Pitchess* motion. However, in the "plausible scenario," he claims he did make those statements, but only because the officers promised him leniency. On this record, the trial court reasonably found that Rodriguez's scenario was not objectively plausible. (*Warrick, supra,* 35 Cal.4th p. 1026 ["[a] plausible scenario . . . presents an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the charges"].)

Further, Rodriguez failed to state a nonculpable explanation for his presence at the Brilliant Drive house or for his actions there. The supporting declaration merely denied Rodriguez told the officers he intended to burgle the house on Brilliant Drive. It did not deny he had that intention, only that he did not tell it to the officers. It also did not deny he was there. Nor did it deny he cut the electricity to the house. It could not. The surveillance video and his own written admission, which were not a subject of the *Pitchess* motion, prove his presence and actions. Rodriguez's written statement was not the subject of the *Pitchess* motion; it only contended that the officers lied about what was said in the car. Further, the declaration failed to explain why he was there and why he cut the electricity. "[T]he trial court acted within its discretion to the extent that it made a 'common sense' determination that defendant's version of events was not plausible 'based on a reasonable and realistic assessment of the facts and allegations.' [Citation.]" (*People v. Sanderson* (2010) 181 Cal.App.4th 1334, 1341; *People v. Thompson* (2006) 141 Cal.App.4th 1312.)

## II.    Sentencing Issues

Rodriguez also contends the trial court imposed an inapplicable fine and erroneously calculated his conduct credits. We agree.

Section 1202.5, subdivision (a) assesses a crime prevention fine of $38 if the defendant is convicted of any one of the enumerated offenses, including burglary under section 459. However, Rodriguez was convicted of two counts of attempted burglary, not burglary. As a result, the $38 fine was improperly imposed. It should be vacated.

9

The trial court awarded Rodriguez 469 days of custody credit, equal to 391 days actual custody and 78 conduct credit days. Rodriguez contends, and the People concede, the trial court's calculation of conduct credit was incorrect because it used the wrong formula. Rodriguez is entitled to 116 additional days of conduct credit. Rodriguez committed his crimes on November 1, 2010, and December 8, 2010, while he was on parole for a serious or violent felony. (§§ 3000 & 1203.085. subd. (a).) He also admitted a prior strike for a 2010 burglary conviction under section 459. He was sentenced on October 23, 2012.

From September 28, 2010, to October 1, 2011, section 2933, subdivision (e)(3) provided in relevant part, "[s]ection 4019, and not this subdivision, shall apply if the prisoner . . . has a prior conviction for a serious felony, as defined in Section 1192.7 . . . ." Effective January 25, 2010, section 4019 was amended so that it essentially read that a defendant who had not committed a serious felony would earn "one-for-one" presentence conduct credit, while a defendant who had committed a serious felony would continue to earn presentence conduct credits as they would have under the former version of section 4019, or two days of credit for every four days in actual custody. (See Stats. 2009-2010, 3d Ex. Sess., ch. 28, §§ 28 & 50.) These sentencing statutes were in effect when Rodriguez committed his offenses in November and December 2010. The parties agree these sentencing statutes control his current claim on appeal.

Thus, Rodriguez is entitled to a total of 194 conduct days. This is calculated by dividing the number of actual custody days (391) by four, discarding the remainder, and multiplying the result (97) by two. (*People v. Culp* (2002) 100 Cal.App.4th 1278, 1283.)

## DISPOSITION

The judgment is modified to vacate the $38 fine imposed pursuant to section 1202.5, subdivision (a) and to reflect a total of 585 days of total presentence credit, reflecting 391 days of actual credit plus 194 days of conduct credit. The trial court shall amend the abstract of judgment accordingly and forward copies to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


                                              BIGELOW, P.J.

We concur:


RUBIN, J.


FLIER, J.

11